OKLAHOMA TAX COMMISSION, Plaintiff in Error,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation, Defendant in Error.

No. 40056.

Supreme Court of Oklahoma.

Aug. 18, 1964.

As Corrected Oct. 12, 1964.

Rehearing Denied Oct. 27, 1964.

Albert D. Lynn, E. J. Armstrong, Ralph H. Schaller, Oklahoma City, R. O. Ingle, Sallisaw, for plaintiff in error.

Melvin R. Quinlan, Oklahoma City, James A. DeBois, St. Louis, Mo., for defendant in error.

Wayne E. Babler, John Hugh Roff, Jr., St. Louis, Mo., C. D. Cund, Duncan, of counsel.

WILLIAMS, Justice.

Appellant, Oklahoma Tax Commission, will hereinafter be referred to as Commission, and plaintiff below cross-appellant here, Southwestern Bell Telephone Company, will be referred to as SW Bell.

SW Bell, a Missouri corporation, is engaged in the business of a telephone public utility. It furnishes intrastate and interstate telephone service to the public in the States of Oklahoma, Texas, Arkansas, Kansas and Missouri, and a portion of Illinois. It is one of the several corporations owned wholly or in part by the American Telephone & Telegraph Company and, except for qualifying shares held by SW Bell directors, all of its capital stock is owned by the parent corporation. The Oklahoma area of SW Bell is not separately incorporated, but in a general way, operates as a separate activity.

SW Bell reported its 1955 and 1956 Oklahoma Income Tax in accordance with the direct or separate accounting method authorized by 68 O.S.1961 § 878, subsection (f) under which it showed income allocated to Oklahoma to be as follows:

| 1955: | Intrastate income subject to tax | | $6,402,896.00 |
| | Interstate " " " " | | 1,341,490.00 |
| | | Total, | $7,744,386.00 |
| 1956: | Intrastate income subject to tax | | $7,450,528.00 |
| | Interstate " " " " | | 1,519,998.00 |
| | | Total, | $8,970,526.00 |

The Commission rejected the tax return because it determined that the whole business of taxpayer is a single business enterprise conducted in more than one state, commonly called a "unitary business," to which the formula provided by 68 O.S.1961, § 878 subd. (g) is applicable, and attributing to SW Bell's Oklahoma business additional income of $1,729,000.00 for 1955, and $1,720,000.00 for 1956, additionally assessed the taxpayer $69,172.87 for the year 1955, and $68,829.20 for the year 1956, with interest on both sums.

SW Bell paid under protest the additional sums so assessed, and pursuant to the provisions of 68 O.S.1961, § 1475, instituted this action.

The trial judge, trying the case with a jury waived, found that SW Bell's method of operation and books of account were conducted and maintained in such manner that income from furnishing of intrastate service was distinguishable from income from interstate service, and that the sale of intrastate service was an activity of such separateness and completeness as might be maintained as an independent business and capable of producing a profit in and of itself. The finding and judgment thereon are assigned as error by Commission. As to SW Bell's interstate operation, however, the trial court found the three-factor formula for computation of Oklahoma Income Taxes set forth in Sec. 878 subd. (g) applicable, deeming such operation to be a unitary interstate business as defined therein. SW Bell cites such finding and judgment thereon as error by the district court.

The issue involved, therefore, is whether the formula set forth in 68 O.S.1961, § 878 subd. (g) for use in determining the net income of a single business enterprise conducted in more than one state, commonly called a unitary business, should be determined to be applicable under the facts of the case, or whether SW Bell is engaged in an intrastate telephone business activity so substantially separate and complete from its interstate telephone business activity that it might be maintained as an independent business and capable of producing a profit in and of itself, the net income being separately determinable so as to make subsection (f) of said Sec. 878 the applicable method for computing SW Bell's income tax.

SW Bell's method of bookkeeping conforms to the telephone system's "Separations Manual" which, for rate making purposes of Federal and State regulatory commissions, embodies separation of intrastate and interstate investment in equipment and property, expenditures for employees' wages or compensation, maintenance of headquarters office in St. Louis, Missouri, and other facilities, as well as allocation in its accounts of the income it receives.

The Commission takes the position that separation and allocation of income and overhead expenses in conformity to the "Separations Manual" may not be substituted for the legislatively prescribed averaging method of arriving at net income of a unitary business as is set forth in Sec. 878 subd. (g); that SW Bell's intrastate and interstate activities are commingled in a single business enterprise too closely connected and necessary to each other to justify division or separate allocation, and that the three-factor formula for computation of net income within Oklahoma as set forth in Sec. 878 subd. (g) applies, as other computation methods may not produce the amount of income tax to which Oklahoma is entitled.

Contending that Oklahoma income is all that the Commission may tax and that its books and records reflect, by usual and acceptable accounting practices, its Oklahoma income obtained by business activities of substantial separateness and completeness as if its intrastate and interstate activities were maintained by two independent businesses each capable of producing a profit in and of itself, SW Bell says its income tax should be computed under Sec. 878 subd. (f) which would directly tax its net income in Oklahoma.

Our State Income Tax Law, enacted in 1935, as last amended prior to the years herein concerned, provides (68 O.S.1961, § 876) for the imposition of an income tax upon net income derived from all property owned partly within and partly without the state, and/or from business done partly within and partly without the state to be determined under formulae provided in Sec. 878, among which subsection (f) relates to business activities "of substantial separateness and completeness, such as might be maintained as an independant business (however convenient and profitable it might be if operated conjointly with a related activity) and capable of producing a profit in and of itself, [which] shall be separately allocated to the State in which such activity is conducted."

Said formulae also include, in subsection (g), a method for determination of a business' net income for income taxing purposes by an averaging of the ratios of its investments, expenditures, and receipts of revenue within the state to those everywhere where the taxpayer is a single enterprise conducting a "unitary business" in more than one state and the component parts of its business are essential to the realization of ultimate gain from the enterprise as a whole and are too closely connected to justify separate allocation as in subsection (f).

The method of allocation of net income to be taxed by Oklahoma authorized by subsection (g) also provides for including interstate toll service revenue, in the case of a telephone or telegraph enterprise, in the proportion that toll line wire miles with-

in Oklahoma bear to the total of its toll line wire miles.

Upon hearing evidence the district court found:

"Plaintiff's method of operation and books of account are conducted and maintained for the State of Oklahoma in such manner that income from the sale of intrastate service in Oklahoma is clearly distinguishable from income from the sale of interstate service involving Oklahoma.

"Plaintiff's intrastate operation or business activity in the State of Oklahoma has a substantial separateness and completeness from its other operations or business activities, is such as might be maintained as an independent business, is capable of producing a profit in and of itself, and can be allocated to the State of Oklahoma.

"Plaintiff's interstate operation, its interstate 'long distance' business, constitutes business done partly within and partly without the State of Oklahoma, cannot be allocated to any one State, and constitutes a unitary interstate business subject to the three-factor formula for computation of Oklahoma income tax.

"The unitary business or three-factor formula is not arbitrary or unreasonable when applied to plaintiff's interstate earnings attributable to Oklahoma, and is not out of proportion so as to require the use of Section (h) 68 OSA, 878."

The court's conclusions of law contained the following paragraphs:

"Inasmuch as plaintiff's intrastate operation, business and earnings in Oklahoma are substantially separate and complete from its operation in the other five states in which it does business, its income therefrom should be determined by applying Section (f) 68 OSA 878, and not Section (g) 68 OSA 878.

"Inasmuch as plaintiff's interstate operation, its interstate 'long distance' business, is unitary, that portion of the income therefrom attributable to Oklahoma should be determined by the three-factor formula prescribed by Section (g) 68 OSA 878, and the application of that formula to this income is not arbitrary or unreasonable."

Whether the intrastate activity of a particular multi-state business is separate or unitary would seem largely to depend upon the nature of its business and the manner in which its business is conducted. In a number of decisions of the courts wherein similar issues were involved the test applied for determining whether a particular business was separate or unitary was whether the operation of the portion of its business within the state was dependent upon or contributory to the operation of business outside the state, or said otherwise, whether a business enterprise's various parts were necessarily interdependent and of mutual benefit so as to form one business rather than being capable of being divided into several business entities. Western Auto Supply Co. v. Oklahoma Tax Commission, Okl., 328 P.2d 414; Southwestern Gas & Electric Co. v. Oklahoma Tax Commission, 208 Okl. 85, 253 P.2d 549; Fleming, et al., Trustees of the Estate of C.R.I. & P. Ry. Co. v. Oklahoma Tax Commission, (10th C.C.A.) 157 F.2d 888; and Butler Bros. v. McColgan, 315 U.S. 501, 62 S.Ct. 701, 86 L. Ed. 991. In this case the tests suggested by SW Bell and applied by the trial court, were:

(1) Whether the taxpayer's Oklahoma business is of substantial separateness and completeness such as might be maintained as an independent business; and

(2) Whether the taxpayer's Oklahoma business is capable of producing a profit in and of itself.

Determination thereof, required from a comparison of the language of subsections (f) and (g) of 68 OS1961, § 878, unchanged

from the time concerned, upon consideration of the evidence, resulted in the findings of fact herein set forth.

■ The record discloses sufficient evidentiary support of the herein quoted findings of the trial court. SW Bell keeps its books and records in such a way that there is a month by month and year by year showing of its income applicable to Oklahoma from the sale of services intrastate and interstate. The evidence showed the quantity of business credited to each phase of activity sufficient to justify a conclusion on the part of the trial judge that either operation is capable of separately producing a profit in and of itself.

Our impression of the over-all effect of the evidence is that while SW Bell might be said to operate a unitary business, the trial court was warranted in finding it operates it in such a fashion that business conducted intrastate in Oklahoma is substantially separated. Much of the same equipment is used for intrastate as interstate business, but SW Bell is able to accurately allocate the percent and the ratio of each, based upon research and studies. In theory, at least, separation of its income and business in both interstate and intrastate activity and property employed in interstate and intrastate activity can scarcely be said to be much less separate for accounting purposes, if any, than would result from actual physical separation. The trial court found it possible to segregate and determine SW Bell's intrastate net income and that as to it the three-factor formula was not to be used.

The opinion of this court in Magnolia Petroleum Co. v. Oklahoma Tax Commission, 190 Okl. 172, 121 P.2d 1008, although under an allocation statute existing previous to the enactment of section 878, said direct allocation ought to be applied where practicable.

■ 68 O.S.1961, § 876 provides first for the levy of a tax upon the net income of persons, as in the taxing act defined, derived from property owned and/or business conducted within this State. Succeeding such provision is one for imposition of a like tax upon net income from property partly within and partly without this State. The first provision applies to known income and, being known, requires no resort to formula to arrive at the quantity or amount thereof. As to the taxpayer's intrastate operation, or that part of its business activity in Oklahoma which is substantially separate and complete from interstate business activities, we think the finding of the trial court that a separate allocation in accordance with 68 O.S.1961, § 878 subd. (f) should be made was not erroneous.

■ The evidence was in conflict on the issue of whether the manner of operation of SW Bell's interstate activities is such that it might be maintained as an independent business, or an operation that SW Bell conveniently operates conjointly with its intrastate business. While SW Bell urges that its interstate business is also possessed of sufficient separateness and completeness, under its method of keeping books and records, as to be maintained as an independent business, we are not persuaded that the judgment of the trial court with respect thereto should be reversed. The imagination can perhaps picture a telephone business which does nothing but render or furnish intrastate service, using only items of property located wholly within the one state; it can less readily conceive of a telephone system which provides no local service, nor communications within the boundaries of Oklahoma, but affords communication only in interstate service. The facts warranted a finding by the trial court that SW Bell's interstate business lacks "substantial separateness" in this. Theoretical separations are inadequate to overcome realization that availability of interstate service depends upon the existence of intrastate facilities and service. But, were it otherwise, a long distance call from a point in Oklahoma to a point in another state involves the use of property partly within and partly without this state, and produces income from the sale of serv-

ice partly within and partly without the state, and a business engaged in affording such interstate service appears to be the subject to which subsection (g) applies, rather than subsection (f).

In Southwestern Gas & Electric Company v. Oklahoma Tax Commission, supra, this court said that Oklahoma as a state of the situs of a unit of the business of a multi-state enterprise had a right to allocate and assign to itself, under subsection (g) that portion of the net income of the interstate operation which is reasonably attributable to the taxpayer's property owned in this state and business conducted therein. See, also, Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165.

Subsection (g) also contains language indicating that interstate service of telephone and telegraph companies was clearly within the purview of the intention of the Legislature in enactment of section 878, and particularly subsection (g). The provision there that the antecedent term of the ratio to be used in connection with the three-factor formula of allocation shall include that part of interstate toll service revenues in the proportion that toll line wire miles within Oklahoma bear to the total of toll line wire miles of the taxpayer is persuasive of a view contrary to SW Bell's contention.

■ While SW Bell's accounting method may be entirely suitable and necessary for the conduct of its interstate business and to record its income and expenses separately for each state in which it operates, the Tax Commission found otherwise, as in effect did also the district court. This occurrence poses the question of which has the right to determine whether a taxpayer's separate accounting method is practicable and clearly reflects net income attributable to Oklahoma—the Commission or the taxpayer? Without answering such question it would seem that where separate subsections of the same section of statute might equally, but inconsistently, apply to the business of the taxpayer, the determination

by the trial court ought not be reversed by this court. In an action at law, where a jury is waived, the determination of the trial court has the same force and effect as the verdict of a properly instructed jury, and its judgment will not be disturbed on appeal if there is any competent evidence to support it. See D. W. L., Inc. v. Goodner-Van Engineering Co., Okl., 373 P.2d 38.

■ SW Bell next contends that should its interstate business be viewed as not subject to computation under subsection (f) of section 878, the application of the three-factor formula of subsection (g) ought to have been modified as is permitted by subsection (h) of said section, and the trial court's finding of fact number eight constitutes error. That finding was to the effect that as applied to SW Bell's unitary interstate business the allocation to Oklahoma under subsection (g) of the portion of income found to be attributable to its Oklahoma earnings was not so out of proportion as to require the Oklahoma Tax Commission to resort to use of subsection (h). The last mentioned subsection empowers the Oklahoma Tax Commission to reduce, or increase, the weight of one or more of the statutorily prescribed factors of the formula if it finds that as to the particular business the formula attributes to Oklahoma interstate income earned elsewhere disproportionate to that which is reasonable. While the Oklahoma Tax Commission is so empowered, we determine that the trial court was warranted in finding from the circumstances that such commission's failure to make an adjustment of one or more factors of the formula for determining the taxpayer's interstate income does not amount to arbitrariness.

The issue between the taxing authority and the taxpayer principally concerned the larger matter of which of subsections (f) or (g) applied to the entire income of the taxpayer, rather than the segment thereof consisting of the taxpayer's interstate telephone business. The difference in the amount subject to tax as indicated by ap-

plication of the taxpayer's "Separations Manual" book-keeping system or by application of the provisions of subsection (g) made the controversy. As to the smaller problem it was not shown in what manner any particular factor of the formula prescribed by subsection (g) was disproportionate to interstate income attributable to Oklahoma, but only that by the records of the taxpayer the result was different. No suggestion by SW Bell as to the propriety of an adjustment of a factor of the formula because of a circumstance of its business, or otherwise, was made. Rather, an insistence upon the consideration by the taxing authority of the accuracy of the figures reflected by the "Separations Manual" is evident, and this, despite the objection by the taxing authority that such system also contained allocations, but not identical to those in the statutory formula.

■ It is pointed out in the brief of SW Bell that the result of the two methods is at variance by approximately fifteen percent. But since it is evident that factors of allocation, as to revenues and expenses, essential to systems of accounting, are utilized in the taxpayer's system of accounts and are allowed for in the taxing authority's three-factor formula, and since also there is absence of agreement as to the variance, its significance is not determinative. Mathematical exactness in allocating accounting system-value would seem impossible of attainment as any method will contain imperfections or variations from perfection in accuracy of result. As was pointed out by this court in Southwestern Gas & Electric Co. v. Oklahoma Tax Commission, supra, if the taxpayer was of the opinion that the statutory formula used by the Tax Commission distorted its allocable net income it should have suggested a formula that would not do so. In this case it would seem incumbent upon the taxpayer to point out in what manner the three-factor formula was disproportionate and make suggestions as to which factor required modification in order to produce the more

accurate result. Fleming v. Oklahoma Tax Commission, supra, reads:

> "* * * It was the railroad's duty not only to point out in what manner the application of the statutory formula ascribed extra-territorial value to Oklahoma, but also propose methods which would bring about the desired permissible result. It failed in both respects."

It appears that the same may be said here of the contention that error can be attributed to the trial court with respect to its finding that interstate earnings of SW Bell attributable to Oklahoma under the three-factor formula were not so disproportionate as to require the use of subsection (h), rather than (g), of 68 O.S.1961, § 878.

■■ Magnolia Petroleum Co. v. Oklahoma Tax Commission, supra, is also mentioned by SW Bell as holding that determination of Oklahoma income of a foreign corporation by the method of applying an allocation formula might result in taxing profits arising beyond the jurisdiction of the state in violation of the due process clause of the Federal Constitution. Other cases referred to in the same connection are Curlee Clothing Co. v. Oklahoma Tax Commission, et al., 180 Okl. 116, 68 P.2d 834, and Rock Island Refining Co. v. Oklahoma Tax Commission, 193 Okl. 468, 145 P.2d 194. It is true, of course, that a state may not tax the privilege of engaging in interstate commerce or lay a wall around its borders preventing interstate commerce. Underwood Typewriter Co. v. Chamberlain, supra. But as was pointed out in Rock Island Refining Co. v. Oklahoma Tax Commission, supra, the statutory formula allocates for taxation by Oklahoma only the portion of income derived both from intrastate and interstate business attributable to business transacted within the state, allowing deductions for net income derived from business beyond its borders. The cases of Butler Bros. v. McColgan, supra, and Fleming v. Oklahoma Tax Commission, supra,

upheld the constitutionality of the application of an indirect allocation formula in the circumstances therein involved. See also Northwestern States Portland Cement Co. v. State of Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421, 67 A.L.R.2d 1292, holding that the due process clause is not violated by a state net income tax on that portion of a foreign corporation's net income earned from and fairly apportioned to business activities within the taxing state, where the taxpayer engages in substantial income producing activity in the taxing state.

Affirmed.

HALLEY, V. C. J., and JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.